**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
Olsen Daines PC
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-201-4570


**Kelly Jones, OSB No. 074217**
Of Attorneys for Plaintiff
Law Office of Kelly D Jones

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **VICKY SILVA,** a consumer residing in Oregon, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>**UNIQUE BEVERAGE COMPANY, LLC**, a foreign corporation,<br><br>        Defendant. | Case No. 3:17-cv-00391-HZ<br><br>**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**<br><br>Oral Argument Requested |

**RESPONSE TO MOTION TO DISMISS** – Page 1 of 42

## INTRODUCTION

In *Henry*, this Court correctly determined that when a product contains a derivative of the fruit on its label, federal regulations permit the label to say it is naturally flavored by the fruit. State law claims premised on labels that conform to these federal regulations are pre-empted.

However, under the same federal regulations, when a product contains neither an ingredient nor a derivative of the fruit on its label, the product must be labeled either with the flavor of the fruit from which the flavor is derived or as artificially flavored.

In this case, defendant's label falls into the second category above because it contains neither coconut ingredients nor coconut derivative. Vicky Silva's complaint alleges that defendant's nonconforming label confused her as to the source of its so-called coconut product, and misled her about whether its product actually contained coconut ingredients or coconut derivative or any coconut characteristics.

For the reasons below, federal law does not pre-empt Vicky Silva's claim under these facts. Case law is clear that an ingredient list does not shield a manufacturer from liability for an otherwise misleading representation on a product label. Because the allegations in Vicky Silva's complaint, assumed true, sufficiently state a claim under the UTPA, defendant's motion to dismiss must be denied.

**RESPONSE TO MOTION TO DISMISS** – Page 2 of 42

# TABLE OF CONTENTS

I.    **Introduction** ............................................................................ 2

II.    **Factual Background** ............................................................ 10

    1.    UTPA violation ...................................................... 10

    2.    Causation .............................................................. 10

    3.    Ascertainable loss ................................................ 11

III.    **Legal Points and Authorities** ............................................ 12

    1.    Pre-emption ........................................................... 12

        1.1.    Legal standard ............................................ 12

        1.2.    Food labeling pre-emption ........................... 13

    2.    UTPA ...................................................................... 15

        2.1.    Ascertainable loss ....................................... 16

3.   FRCP 9(b) ............................................................... 19

    3.1.   UTPA and FRCP 9(b) .................................. 20

    3.2.   Particularity required .................................. 20

4.   Injunctive relief ..................................................... 21

**IV.   Argument** ..................................................... 22

1.   Vicky Silva's UTPA claim is not pre-empted. .................... 22

    1.1.   Defendant's label fails to comply
        with federal regulations. ............................. 23

    1.2.   Defendant's interpretation of the
        applicable regulation conflicts with
        its plain language and purpose. .................. 25

    1.3.   Vicky Silva's UTPA claim imposes
        no additional obligations on defendant. ...... 27

    1.4.   An ingredient list does not excuse
        deception. ..................................................... 29

    1.5.   *Henry* is distinguishable. ........................... 30

2.  Vicky Silva's complaint alleges facts sufficient to
    state a claim under the UTPA. .......................................... 31

    2.1.  Vicky Silva's complaint sufficiently
          alleges ascertainable loss. ........................... 31

3.  FRCP 9(b) doesn't apply, and even if it did, Vicky
    Silva's complaint already satisfies its heightened
    pleading standard. ............................................. 36

4.  Injunctive relief request withdrawn. ................................. 39

**V.  Conclusion** ................................................................ 40

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)  .................................................. 12

*Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947 (N.D. Cal. 2013)  .......... 27

*Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85 (1977)  ........... 15

*Dvora v. Gen. Mills*, 2011 WL 1897349

      (C.D. Cal. May 16, 2011) ........................................................... 26

*Eminence Capital, LLC v. Aspeon, Inc.*,

      316 F.3d 1048 (9th Cir. 2003) .................................................... 38

*Fla. Lime & Avocado Growers v. Paul*, 373 U.S. 132 (1963)  .............. 13

*Henry v. Gerber Products Co.*, 2016

      U.S. Dist. LEXIS 52638 (D. Or. Apr. 18, 2016)  ........ 2, 25, 26, 30

*In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008) ................. 27

*In re U.S. Foodservice Inc. Pricing Litig.*,

      729 F.3d 108 (2d Cir. 2013)  ....................................................... 36

*Ivie v. Kraft Foods Glob., Inc.*,

      2013 U.S. Dist. LEXIS 25615 (N.D. Cal. Feb. 25, 2013)  .......... 27

*Jou v. Kimberly–Clark Corp.*,

      2013 U.S. Dist. LEXIS 173216 (N.D. Cal. Dec. 10, 2013)  ........ 29

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ................... 20

*Lam v. Gen. Mills, Inc.*,

      859 F.Supp.2d 1097 (N.D. Cal. 2012) .................................. 25, 29

*Lockwood v. ConAgra Foods, Inc.*,

    597 F. Supp. 2d. 1028 (N.D. Cal. 2009) ...................................... 13

*Martin v. Cahill*, 90 Or. App. 332 (1988) ............................................. 15

*McKie v. Sears Prot. Co.*,

    2011 U.S. Dist. LEXIS 47967 (D. Or. Feb. 22, 2011) .......... 20, 37

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) .................................. 13, 28

*Mendoza v. Lithia Motors, Inc.*,

    2017 U.S. Dist. LEXIS 4716 (D. Or. Jan. 11, 2017) ...... 15, 34, 25

*Pearson v. Philip Morris Inc.*, 358 Or. 88 (2015) ................. 15-18, 32-35

*Raudebaugh v. Action Pest Control, Inc.*,

    59 Or. App. 166 (1982) ............................................................. 20

*Reyes v. Netdeposit, L.L.C.*, 802 F.3d 469 (3d Cir. 2015) .................... 36

*Samet v. Procter & Gamble Co.*,

    *2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013)* ......... 26

*Sanders v. Francis*, 277 Or. 593 (1977) ................................................ 19

*Schreiber Distrib. v. Serv-Well Furniture Co.*,

    806 F.2d 1393 (9th Cir. 1986) ............................................. 20, 38

*Scott v. Western Int'l Surplus Sales, Inc.*,

    267 Or. 512 (1973) ................................................................... 15

*Shea v. Chicago Pneumatic Tool Co.*, 164 Or. App. 198 (2000) ........... 35

*Shroyer v. New Cingular Wireless Servs., Inc.*,

    622 F.3d 1035 (9th Cir. 2010) ................................................... 12

**RESPONSE TO MOTION TO DISMISS** – Page 7 of 42

*State ex rel. Johnson v. Int'l Harvester Co.*,

    25 Or. App. 9, 12 (1976) ............................................................. 21

*State ex rel. Redden v. Disc. Fabrics, Inc.*,

    289 Or. 375 (Or. 1980) ............................................................... 20

*Stengel v. Medtronic Inc.*, 704 F.3d 1224 (9th Cir. 2013) .................... 12

*Strawn v. Farmers Ins. Co. of Oregon*, 358-59 (2011) ......... 17, 18, 32-34

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ............. 36

*Tri-West Constr. Co. v. Hernandez*, 43 Or. App. 961 (1979) ........... 19,33

*United States v. An Article of Food Labeled Nuclomin*,

    482 F.2d 581 (8th Cir. 1973) ...................................................... 14

*United States v. Mohrbacher*, 182 F.3d 1041 (9th Cir. 1999) ............. 27

*United States v. 45/194 Kg. Drums of Pure Vegetable Oil*,

    961 F.2d 808 (9th Cir. 1992) .................................................. 14,23

*Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003) .... 19, 21, 37-38

*Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127 (1984) .................... 15

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .......... 29-30

*Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) .......... 12

*Wright v. Kia Motors Am. Inc.*,

    2007 U.S. Dist. LEXIS 7431 (D. Or. Jan. 29, 2007) ................. 19

*Wyeth v. Levine*, 555 U.S. 555 (2009) .................................................. 13

*Ziemack v. Centel Corp.*,

    1993 U.S. Dist. LEXIS 516 (N.D. Ill. Jan. 20, 1993) ................ 36

**RESPONSE TO MOTION TO DISMISS** – Page 8 of 42

**Federal Law**

15 U.S.C. § 360 ...................................................................... 28

21 U.S.C. § 343 .......................................................... 13, 14, 22, 23, 28

21 C.F.R. § 101.22 .............................................. 23, 25, 26, 30

**Federal Rules**

Fed. R. Civ. P. 9(b) ........................................... 19, 20, 26, 36-38

Fed. R. Civ. P. 23 .............................................................. 36

**Legislative History**

Pub. L. No. 101-535, 104 Stat. 2353, 2364 (1990) ................................. 13

**Oregon Law**

ORS 646.638 ........................................................... 31

**Oregon Rules**

ORCP 32 ................................................................ 35

## FACTUAL BACKGROUND

**1. UTPA violation**

Vicky Silva's amended complaint (the "complaint") alleges defendant's label violated the Oregon Unlawful Trade Practices Act (UTPA). Complaint ¶ 11. As alleged, defendant's labels "cause the likelihood of confusion and misunderstanding as to [their] source" and "falsely represent that [their] product has at least some characteristic of coconut" and "falsely represent that [their] product has the quality or taste of coconut." *Id.* The complaint alleges defendant's UTPA violation was "willful," based on defendant's hope of "cashing in on the billion-dollar coconut market" without incurring the cost of actually using coconut, which would have "cost defendant more money." *Id.* at ¶ 10.

**2. Causation**

Vicky Silva alleges she relied on defendant's label in making her purchase on February 25, 2017. *Id.* at ¶ 6. Specifically, the complaint alleges Vicky Silva "felt tricked" after purchasing defendant's product, because, in her words, "when I see something that says coconut on the front … that's what I think it is." *Id.* The complaint alleges Vicky Silva only discovered defendant's product had no coconut after she drank it and found it tasted nothing like coconut. *Id.* Before ever talking with an attorney or considering a legal complaint, Vicky Silva sent defendant two emails about its alleged "false advertising." *Id.* In its response to

**RESPONSE TO MOTION TO DISMISS** – Page 10 of 42

Vicky Silva's email complaints, defendant continued to mislead her by suggesting the "fruit essence" in its so-called coconut product came from coconut. (Defendant's response said "The fruit essence comes from extracting natural essential oils from the fruit themselves.") *Id.* Defendant now concedes on page 9 of its motion to dismiss that its product contains neither coconut ingredients nor coconut derivative nor coconut natural flavor nor any coconut characteristics of any kind.

### 3. Ascertainable loss

Vicky Silva's complaint alleges that defendant's violation of the UTPA caused her an economic loss. *Id.* at ¶ 10. She alleges plausible theories to ascertain the loss defendant's violation caused her. *Id.* Vicky Silva alleges she suffered an economic loss of her entire purchase price because she bought a product represented as having coconut characteristics and actually received a product she did not want that "tasted a little funny" and did not taste like coconut and did not have any coconut characteristics or coconut-related health qualities. *Id.* at ¶¶ 6, 10. Vicky Silva also alleges she suffered an economic loss of "the difference between the value of the product [she] received that did not taste like coconut and had no actual coconut or coconut-related health qualities, and the increased value that a product that tasted like coconut and had at least some actual coconut or coconut-related health properties would have had." *Id.* at ¶ 10.

**RESPONSE TO MOTION TO DISMISS** – Page 11 of 42

## LEGAL POINTS AND AUTHORITIES

A motion to dismiss for failure to state a claim may be granted when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). A claim is plausible on its face if the factual allegations in the complaint allow a court to reasonably infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint's factual allegations, a court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the nonmoving party. *See Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

## 1. Pre-emption

Defendants seeking to invalidate state laws based on pre-emption "bear the considerable burden" of overcoming the starting presumption that Congress does not intend to supplant state law. *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013).

### 1.1. Legal standard

In analyzing pre-emption issues, courts must begin with the presumption that unless a "clear and manifest purpose of Congress" exists, federal laws should not supersede the states' historic police

powers. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotation marks and citation omitted); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484-85 (1996). In particular, there is a strong presumption against federal pre-emption in the area of proper marketing and regulation of food because the states have traditionally exercised such power. *See Fla. Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of their people against fraud and deception in the sale of food products' at retail markets within their borders." (citation and alterations omitted)).

### 1.2.    Food labeling pre-emption

Food labeling pre-emption is limited to only a handful of enumerated sections of the federal Food, Drug, and Cosmetic Act (FDCA). Congress declared that the FDCA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section [343-1(a)] of the [FDCA]." Pub. L. No. 101-535, 104 Stat. 2353, 2364 (1990); *see also Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d. 1028, 1032 (N.D. Cal. 2009) ("Congress has explicitly stated that it … permits states to regulate subject matters covered by the NLEA and its regulations provided that such state laws do not fall within the FDCA's express preemption provisions.").

Section 343-1(a) only expressly pre-empts state provisions that impose requirements that are "not identical" to specified subsections of

21 U.S.C. § 343. *See* 21 U.S.C. § 343-1(a)(2) (preempting, inter alia, § 343(c) (regulating imitation or substitute foods that are nutritionally inferior), (d) (regulating misleading containers), and (w) (regulating disclosure of major food allergens)).

Labels do not comply with the FDCA if the overall effect is "false or misleading in any particular." 21 U.S.C. § 343(a). All food labeling laws are subject to this requirement. And "[t]he statute condemns every statement, design and device which may mislead or deceive." *United States v. 45/194 Kg. Drums of Pure Vegetable Oil*, 961 F.2d 808, 811 (9th Cir. 1992). As a result, even if a food's "label is technically accurate and further meets the regulations' disclosure requirements, it must also comply with [§ 343(a)] and not be misleading." *United States v. An Article of Food Labeled Nuclomin*, 482 F.2d 581, 584 (8th Cir. 1973). Thus, the FDCA unquestionably allows FDA (and thus private plaintiffs under parallel state laws) to sue … for a 'false or misleading' label where the label does not violate another, more specific food labeling statute or regulation.

•          •          •

For the convenience of the reader, the specific labeling regulations and case law at issue in this case are entirely contained in the argument section of this response.

**RESPONSE TO MOTION TO DISMISS** – Page 14 of 42

### 2.  UTPA

As a consumer protection statute, the UTPA is to be interpreted liberally in favor of consumers. *Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or 85, 90 n.4 (1977).

To bring a private cause of action under the UTPA, "a plaintiff is required to show that '(1) the defendant committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade practice.'" *Mendoza v. Lithia Motors, Inc.*, No. 6:16-cv-01264-AA, 2017 U.S. Dist. LEXIS 4716, at *8 (D. Or. Jan. 11, 2017) (quoting *Pearson v. Philip Morris Inc.*, 358 Or. 88, 127 (2015).

### 2.1.  Ascertainable loss

A plaintiff seeking to recover statutory damages of $200 under the UTPA is not required to prove the actual amount of the ascertainable loss. *See Martin v. Cahill*, 90 Or. App. 332, 335-36 (1988). An ascertainable loss is defined as "capable of being discovered, observed or established." *Scott v. Western Int'l Surplus Sales, Inc.*, 267 Or 512, 515 (1973). The ascertainable loss requirement must be "viewed broadly," meaning even losses that are too small to be cognizable under the common law are still sufficient for the purposes of the UTPA. *Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 135-36 (1984).

### 2.1.1.  Reliance not required

The elements of common law fraud are not applicable to UTPA claims. "[R]eliance is not, in and of itself, an element of a UTPA claim" though it may be "a natural *theory* to establish the causation of the loss (i.e., the 'injury' in a UTPA claim) for a purchaser *seeking a refund* based on having purchased a product believing it had a represented characteristic that it did not have." *Pearson*, 358 Or. at 126 (emphases added).

*Pearson* is the most recent Oregon Supreme Court opinion on ascertainable loss in the context of state court class certification. As *Pearson* reiterates, reliance is not the only theory a plaintiff can articulate to establish ascertainable loss. *Id.* at 127. Even in the case of a UTPA claim based on misrepresentation, it "is not the nature of the misrepresentation … that requires proof of reliance. It is the misrepresentation *coupled with plaintiffs' theory* for having suffered a loss in the form of the *purchase price* because they did not get what they believed they were buying. In this case, reliance inheres in the combination." *Id.*

### 2.1.2.  Theories of ascertainable loss

*Pearson* discussed various theories a plaintiff could use to ultimately prove ascertainable loss with common evidence. *Id.* at 118-19. These theories include a "diminished value" theory and a "refund of

the purchase price" theory. *Id.* at 119-27. Either of these theories may be sufficient to certify a class action under Oregon's procedural rules. *Id.* According to *Pearson*, the "diminished value" theory of ascertainable loss would not require a plaintiff to prove reliance in order to satisfy the predominance and common proof requirements for "many goods and products." *Id.* at 122. Ultimately, *Pearson* determined that a "diminished value" theory was not viable in the context of the "light" and "regular" cigarette products at issue, based on the specific evidence presented at the trial court level. *Id.*

As for the "refund of the purchase price" theory of ascertainable loss, *Pearson* found that when coupled with the plaintiff's UTPA claim for misrepresentation, individual inquiries regarding the class members' reliance would be necessary. *Id.* at 127. For this reason, the trial court's denial of class certification was upheld. *Id.* at 141-42. But *Pearson* did not foreclose the possibility that in other cases, classwide reliance-in-fact could be shown through common proof manifested in various forms of evidence, such as survey evidence. *Id.* As the Oregon Supreme Court reiterated in *Pearson* in discussing its previous decision in *Strawn v. Farmers Insurance Co. of Oregon*, "this court [previously] declined to hold that, in a class action, reliance always must be established by separate evidence specific to each class member ... we concluded in *Strawn* that the evidence that the plaintiffs had produced

**RESPONSE TO MOTION TO DISMISS** – Page 17 of 42

in that case permitted a factual inference of classwide reliance." *Id.* at

131.

> In *Strawn* the Oregon Supreme Court found that
>
> reliance can, in an appropriate case, be inferred from
> circumstantial evidence … the same misrepresentation
> must have been without material variation to the members
> of the class. In addition, the misrepresentation must be of
> a nature that the class members logically would have had
> a common understanding of the misrepresentation, and
> naturally would have relied on it to the same degree and in
> the same way.

350 Or. 358-59. In *Pearson*, the very unique qualities of the product at

issue precluded a finding of classwide reliance:

> Indeed, as the trial court expressly found, smoking is in
> many ways an irrational choice. When a consumer's choice
> to engage in activity or buy a product involves irrational
> motivations, it is all but patent that individual inquiries
> will be required to determine why the individual members
> of a large class make the choices they make. *See, e.g.*,
> *Poulos*, 379 F3d at 668 (no single, logical explanation for
> gambling exists; for different gamblers, activity may be an
> addiction, a form of escape, a casual endeavor, a hobby, a
> risk-taking money venture, or scores of other things).

358 Or. at 133-34. *Pearson* also discussed the potential for alternative

ascertainable loss theories proven through common evidence that a

plaintiff could use to satisfy predominance standards, also without the

need to ultimately prove reliance, albeit not sufficiently developed by

the plaintiff in *Pearson*.[1]

---

[1] Discussing, for example, the "fraud on the market theory" of
economic loss.

**RESPONSE TO MOTION TO DISMISS** – Page 18 of 42

Plaintiffs are not required to prove reliance, even in regard to a misrepresentation UTPA claim when

> The representation was therefore not a mere statement of opinion; it was an affirmative misstatement by one party of a fact which that party was required to accurately state to the other. Similarly, proof that a party justifiably relied on a representation is not necessary when the representation involves a matter about which the party making it is legally required to inform the other.

*Tri-West Constr. Co. v. Hernandez*, 43 Or. App. 961, 972 (1979). In *Tri-West*, the plaintiffs' UTPA claims were based in part on the defendant's failure to properly disclose certain information required by the federal Truth in Lending Act (TILA), though the plaintiffs did not bring any claims directly under the TILA.

Moreover, reliance is not necessary to prove a causal connection to an ascertainable loss when the UTPA violation is grounded in a failure to disclose. *See Sanders v. Francis*, 277 Or. 593, 598 (1977); *see also Wright v. Kia Motors Am. Inc.*, No. 06-6212-AA, 2007 U.S. Dist. LEXIS 7431, at *9 (D. Or. Jan. 29, 2007).

## 3.  FRCP 9(b)

Under FRCP 9(b), fraud claims must be pled with particularity. This heightened pleading requirement is applicable to a state law claim in federal court when fraud is a "necessary element" of a claim, or when a claim is "grounded in fraud" because it relies exclusively on a "unified course of fraudulent conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

1097, 1103 (9th Cir. 2003). To determine whether a claim is grounded in fraud, courts compare the claim to the elements of a state common law fraud claim. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

### 3.1.    UTPA and FRCP 9(b)

The UTPA was enacted as an alternative to common law fraud. *Raudebaugh v. Action Pest Control, Inc.*, 59 Or. App. 166, 171 (1982). Accordingly, UTPA claims generally do not trigger heightened pleading requirements under FRCP 9(b). *McKie v. Sears Prot. Co.*, No. CV 10-1531-PK, 2011 U.S. Dist. LEXIS 47967, at *31-32 (D. Or. Feb. 22, 2011) (declining to apply FRCP 9(b) to a UTPA misrepresentation claim), *aff'd*, 2011 U.S. Dist. LEXIS 44848 (D. Or. Apr. 26, 2011). Unlike an Oregon common law fraud claim, a UTPA claim does not necessarily require proof of reliance. *Id.* (citing *State ex rel. Redden v. Disc. Fabrics, Inc.*, 289 Or. 375 (Or. 1980)). Further, "where UTPA claims require only negligent misrepresentation, fraud claims require something more." *Id.*

### 3.2.    Particularity required

When FRCP 9(b) applies, a complaint "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Schreiber Distrib. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The complaint must

similarly "set forth what is false or misleading about a statement, and why it is false." *Vess,* 317 F.3d at 1106 (citation omitted).

### 4.  Injunctive relief

As part of the UTPA's remedial scheme, the Oregon legislature granted courts discretion to enjoin future violations. *State ex rel. Johnson v. Int'l Harvester Co.*, 25 Or. App. 9, 12 (1976).

**ARGUMENT**

**1.  Vicky Silva's UTPA claim is not pre-empted.**

Defendant's argument that Vicky Silva's UTPA claim is pre-empted by federal law is erroneous. Contrary to defendant's suggestion, Vicky Silva's claim under the UTPA does not seek to impose any requirements not identical to any of those required under federal regulations. Rather, as explained below, Vicky Silva's claim under the UTPA is identical to a subsection not expressly pre-empted by section 343-1(a). Section 343(a) prohibits any labeling that is "false or misleading in any particular." *See* 21 U.S.C. § 343(a)(1) (defining food as "misbranded" if "its labeling is false or misleading in any particular").

As alleged in Vicky Silva's complaint, defendant's marketing and labeling of its so-called coconut product led her to believe that it contained coconut or, at a minimum, has at least some coconut characteristics or flavor. Complaint ¶ 6. In its response to Vicky Silva's email complaint, defendant doubled down on its misrepresentation by continuing to argue that the fruit essence in its so-called coconut product came from coconut. *Id*. But now on page 9 of its motion to dismiss, defendant concedes its product contains neither coconut ingredients nor coconut derivatives nor coconut natural flavors. Thus, the allegations in Vicky Silva's complaint, assumed true for the purposes of this motion, sufficiently claim that defendant's marketing and labeling are false or

**RESPONSE TO MOTION TO DISMISS** – Page 22 of 42

misleading, in violation of Oregon's UTPA, and thus also section 343(a) of the FDCA. *See 45/194 Kg. Drums*, 961 F.2d at 811.

### 1.1. Defendant's label fails to comply with federal regulations.

Curiously, defendant's motion cites to the applicable regulations [21 C.F.R. § 101.22(i)(1)(i)-(iii)], but ignores the actual text of these regulations. Reference to the actual text of the regulations is instructive, and is in fact essential for the Court to reach the correct result in this case. The applicable regulations regarding products that do not contain any artificial flavor are set forth below, with brief explanatory comments following each section, bracketed in italics.

> (i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), **by word, vignette, e.g., depiction of a fruit, or other means**, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, **such flavor shall be considered the characterizing flavor and shall be declared in the following way**:

> (Bold added.) [*In the present case, the "characterizing flavor" is coconut.*]

> (1) If the food contains **no artificial flavor** which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla," in letters not less than one-half the height of the letters used in the name of the food, except that:

> (Bold added.) [*Here, apparently there is are artificial flavors and the label states "coconut."*]

**RESPONSE TO MOTION TO DISMISS** – Page 23 of 42

(i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", **and [1] the food contains natural flavor derived from such ingredient and [a] an amount of characterizing ingredient insufficient to independently characterize the food, or [b] the food contains no such ingredient,** the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake."

---

(Bold and numbers and letters added.) [*The above section is inapplicable to defendant's product because (1) at least arguably it is not a product commonly expected to contain a characterizing food ingredient like "strawberry shortcake" or "banana split" or "coconut cream pie," etc. Rather it is just a beverage that comes in a variety of flavors and (2) it inarguably does **not** contain at least any "natural flavor derived from such ingredient" (coconut). In fact, defendant's product contains neither coconut ingredients nor any coconut derivative. Under the express language of this provision, "natural flavor derived from such ingredient" (coconut) is required, while "an amount of characterizing ingredient" or "no such ingredient" is optional. Because it is undisputed that defendant's product has no "natural flavor derived from [coconut]," it cannot use the descriptors "natural" or "natural…flavored" but instead must comply with the applicable labeling requirements in another subsection.*]

---

**(ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either [1] with the flavor of the product from which the flavor is derived or [2] as "artificially flavored."**

**RESPONSE TO MOTION TO DISMISS** – Page 24 of 42

(Bold and numbers added)[*This is the section that applies to defendant's product because "none of the natural flavor used in the food is derived from the product whose flavor is simulated" (coconut). Under these regulations, defendant's only two labeling options were to: 1) label its product "with the flavor of the product from which the flavor is derived" (pear juice); or 2) label its product as "artificially flavored." Defendant did neither; thus it failed to comply with the regulations.*]

---

(iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

[*This section does not apply to defendant because its product does not contain "a characterizing flavor from the product whose flavor is simulated." But such products would be labeled with the name of the fruit and described as "natural flavor with other natural flavor." This is the exact wording on the Gerber product at issue in* Henry. *Thus, Gerber's label conformed to the applicable labeling regulation, unlike defendant's product in this case.*]

## 1.2. Defendant's interpretation of the applicable regulation conflicts with its plain language and purpose.

Defendant's label falls outside of 21 C.F.R. § 101.22(i)(1)(i) because its product does not at least contain any "natural flavor derived from [coconut]." *See Lam v. Gen. Mills, Inc.*, 859 F.Supp.2d 1097, 1103 (N.D. Cal. 2012) ("**So long as that product 'contains natural flavor'**

which is 'derived from' the 'characterizing food ingredient,'[2] it will not run afoul of the regulation." (bold added)); *see also Dvora v. Gen. Mills*, No. CV 11-1074-GW, 2011 WL 1897349, *5 (C.D. Cal. May 16, 2011) (noting that under § 101.22(i), "food may be labeled 'natural flavored' **when some flavor is 'derived from' the fruit identified as the characterizing flavor**…" (bold added)).

The applicable section here is (ii), because "none of the natural flavor used in the product here is derived from [coconut]." *See Samet v. Procter & Gamble Co.*, 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432, at *21 (N.D. Cal. June 18, 2013) ("Regulation 101.22(i) states that the label or advertising may contain words or vignettes (including depictions of the fruit) describing the product's flavor even 'if none of the natural flavor used in the food is derived from the product whose flavor is simulated,' **so long as the product is labeled 'artificially flavored.'**" (bold added.))

Taken out of context, and ignoring the rest of the language in this provision, defendant points to the language "…or the food contains no

---

[2] Although defendant may later argue it seems counter-intuitive that a product that does not contain any "artificial ingredients" must be labeled as "artificially flavored," there can be no doubt that 21 C.F.R. § 101.22(i)(1)(i) falls under "no artificial flavor" in 101.22(i)(1). This makes more sense when considering that such products' flavors would not contain even a derivative of the food product that is being represented by the label. The alternative to this result is to simply identify the actual natural flavor of the fruit that is really being used, as Gerber did in *Henry*.

**RESPONSE TO MOTION TO DISMISS** – Page 26 of 42

such ingredient…" in (i) and argues that its label conforms to the requirements of the regulation. However, in addition to being irreconcilable with the other language in (i), such an interpretation would make (ii) and (iii) unnecessary. It is well established that a statute must be interpreted in a manner that gives meaning to its various parts. *See United States v. Mohrbacher*, 182 F.3d 1041, 1050 (9th Cir. 1999) ("A statute must be interpreted to give significance to all of its parts. We have long followed the principle that statutes should not be construed to make surplusage of any provision."). The interpretation urged by defendant would undercut this principle and conflict with the plain language and purpose of the regulation.

### 1.3. Vicky Silva's UTPA claim imposes no additional obligations on defendant.

There is "no indication from the text of the NLEA or its legislative history that Congress intended a sweeping preemption of private actions predicated on requirements contained in state laws." *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 956 (N.D. Cal. 2013) (quoting *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008)).

Both the legislative history and the text of the statute itself makes clear that Congress did not intend to prevent consumers from bringing unfair competition or other state law claims, so long as they did not impose different or additional requirements from those set forth in the FDCA. *See Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW,

**RESPONSE TO MOTION TO DISMISS** – Page 27 of 42

2013 U.S. Dist. LEXIS 25615, at *21 (N.D. Cal. Feb. 25, 2013) ("Plaintiff counters that each and every label or package at issue actually violates existing FDA policies, and thus, plaintiff seeks to impose nothing more than what the FDA already requires.") *id*. at 22-23 (noting that express pre-emption under the FDCA exists only where a plaintiff necessarily "seeks to enforce requirements in excess of what the FDCA, NLEA, and the implementing regulations require").

As shown above, defendant's label does not conform to the requirements of the applicable federal labeling regulation. Assuming the facts in Vicky Silva's complaint are true, a reasonable juror may well determine defendant's label is misleading and deceptive under Oregon law. Thus, for this reason (and others), Vicky Silva's consumer protection claim under the UTPA is not pre-empted under these facts.

Vicky Silva acknowledges that the NLEA contains an express pre-emption provision: "[e]xcept as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish … any requirement for a food" which is not identical to the requirements of the FDCA. 21 U.S.C. § 343-1(a). In *Lohr*, the Supreme Court considered the nearly identical express pre-emption provision in the Medical Devices Amendment (MDA) to the FDCA, 21 U.S.C. § 360k(a). The Supreme Court held that section 360k(a) did **not** bar the plaintiff's negligence and strict liability claims because they were based

on the defendant's failure to use reasonable care. 518 U.S. at 495. The Court further noted that nothing in that provision "denies [states] the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements." *Id*. The same principle applies in this case.

### 1.4.    An ingredient list does not excuse deception.

Defendant's argument that alleged misrepresentation is not actionable because its ingredient list did not identify coconut is without merit. Courts have consistently rejected the argument that the accurate disclosure of ingredients on product packaging necessarily insulates a food product manufacturer from liability for misleading statements elsewhere on the product packaging:

> We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008); *see also Lam*, 859 F. Supp. 2d at 1105 ("ingredients list cannot be used to correct the message that reasonable consumers may take from the rest of the packaging"); *Jou v. Kimberly–Clark Corp.*, No. C-13-3075 JSC, 2013 U.S. Dist. LEXIS 173216, at *34 (N.D. Cal. Dec. 10, 2013)

("Defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused."). As these cases make clear, an ingredients list is not a "shield" for liability for deception. *Williams*, 552 F.3d at 939.

### 1.5.    *Henry* is distinguishable.

On page 11 of its motion to dismiss, defendant mischaracterizes this Court's decision in *Henry* by arguing that this case is "virtually identical" to *Henry*, and by claiming that "the facts and legal issues here mirror those in *Henry*." Defendant is mistaken.

In *Henry*, this Court reached the correct conclusion that the plaintiff's claims were precluded. *Henry v. Gerber Products Co.*, No. 3:15-cv-02201-HZ, 2016 U.S. Dist. LEXIS 52638 (D. Or. Apr. 18, 2016). As this Court reasoned, when a product contains both a characterizing flavor from the actual fruit whose flavor is simulated, and contains other natural flavor which supports the characterizing flavor, then applicable federal labeling regulations permit and require the label to state that it is naturally flavored "with other natural flavor[s]." 21 C.F.R. § 101.22(i)(1)(iii). [3]

---

[3] In *Henry*, the infant cereal product's label read "Banana [and] Naturally flavored with other natural flavors," and its ingredients listed, inter alia: "Dried Apple Puree … Natural Banana Flavor." *Henry*, 2016 U.S. Dist. LEXIS 52638, at *2.

However, when, as is the case of defendant's so-called coconut product, none of the natural flavor used in the product is even at least derived from the actual represented fruit, the label must say "artificially flavored." Or, the label could simply reflect what the product is (i.e., "sparkling water with pear juice"). 21 C.F.R. § 101.22(i)(1)(ii).

As alleged in Vicky Silva's complaint, defendant wanted to cash in on the "billion-dollar coconut market" without incurring the cost of actually using coconut, which would have "cost defendant more money." Complaint ¶ 10. But defendant's misleading label fails to conform with application federal regulations, and thus Vicky Silva's UTPA claim cannot be pre-empted.

## 2.  Vicky Silva's complaint alleges facts sufficient to state a claim under the UTPA.

As explained below, Vicky Silva alleges more than sufficient facts in her complaint to state a plausible claim for relief under the UTPA at this early stage in the case.

### 2.1.  Vicky Silva's complaint sufficiently alleges ascertainable loss.

Page 16 of defendant's motion correctly states that Vicky Silva "must show that she has suffered an ascertainable loss of money or property" as a result of its alleged UTPA violation. Ascertainable loss is indeed a necessary element of any private right of action brought under ORS 646.638(1). However, the assertion on page 19 of defendant's

**RESPONSE TO MOTION TO DISMISS** – Page 31 of 42

motion that Vicky Silva's complaint must be dismissed because she "does not allege that she or any class member relied on any of Unique's supposed product label representations" misses the mark. The Oregon Supreme Court has made clear in *Pearson* and *Strawn* that reliance is not a pre-requisite to establish a UTPA claim.

### 2.1.1. Vicky Silva's complaint cannot be dismissed at this stage for failure to allege reliance.

As *Pearson* and *Strawn* reaffirm, reliance is not a necessary element of any UTPA claim – reliance is only necessary to the causational link to an ascertainable loss if a plaintiff alleges a UTPA misrepresentation violation and advances a theory of ascertainable loss based upon refund of the purchase price, rather than a diminished value theory, or another alternative theory, to show that plaintiff's (or the class members') ascertainable loss was caused by the misrepresentation. But even in those specific scenarios, akin to *Strawn*, where the identical representation would have been relayed to the entire class and the class members would likely have a common understanding of what the representation meant, and would have relied upon the representation in the same way, class certification may be granted. For instance, consumers who purchased a beverage that prominently displayed pictures of empty coconuts depleted of their liquid, with large print stating "coconut naturally flavored sparkling water with juice" on the front of the bottle, containing a liquid colored like coconut water, would

believe those representations mean the beverage contains some characteristic or quality or flavor of coconut. When it comes time for the certification stage in this case, *Pearson* and *Strawn* make clear that reliance can be satisfactorily proven classwide through circumstantial evidence.

Similar to the *Tri-West* opinion, the defendant in this case made an alleged misrepresentation that failed to conform with federal law. In *Tri-West*, the defendant failed to comply with TILA; in this case, the defendant failed to comply with federal labeling regulations. Neither the plaintiffs in *Tri-West* nor Vicky Silva in this case bring claims directly under federal law, only the UTPA. The *Tri-West* opinion makes clear that in these scenarios, plaintiffs (and thus the putative class) are not required to prove reliance in order to causally connect ascertainable loss to defendant's unlawful misrepresentations and omissions of legally-required facts.

Even if reliance were a necessary element under the UTPA, Vicky Silva's complaint clearly alleges that she relied on the defendant's label, then "felt tricked" when she discovered the product "tasted nothing like coconut" and had no coconut characteristics. Complaint ¶ 6. For all these reasons, Vicky Silva's complaint cannot be dismissed for failure to allege reliance as defendant suggests.

**RESPONSE TO MOTION TO DISMISS** – Page 33 of 42

### 2.1.2. Defendant's reliance on state court procedural certification analysis is not relevant to its motion to dismiss.

Defendant's reliance on certification opinions is misplaced. Class discovery, or any discovery at all, has not yet even begun. Nor has Vicky Silva had the opportunity to fully develop and fully flesh out her range of possibilities and theories of classwide common proof. As discussed above, defendant's citations to *Pearson* and *Mendoza* in support of its argument that Vicky Silva must plead reliance are without merit. On page 16 of its motion, defendant states that "the Oregon Supreme Court and the District of Oregon have dismissed plaintiffs' UTPA claims because there was no ascertainable loss that was caused by the defendants' alleged misrepresentation." But of course, in *Pearson*, the Oregon Supreme Court upheld the trial court's decision to deny class certification because it agreed that based upon the unique facts of that case, and in its review of the evidentiary record, denial of class certification was proper because the predominance requirement was not satisfied. The trial court certainly did not dismiss Pearson's UTPA claims at the pleading stage, as defendant suggests.[4]

---

[4] The *Pearson* opinion was clear to contrast its previous decision in *Strawn*, where it agreed with the trial court that "class plaintiff's circumstantial evidence created a jury question on the issue of classwide reliance" **because** that decision was "inapposite to the class certification issue that this case presents." *Pearson* at 132.

**RESPONSE TO MOTION TO DISMISS** – Page 34 of 42

In *Mendoza*, Judge Aiken agreed with the plaintiffs that reliance was not a necessary element of their UTPA claim, and gave leave for plaintiffs to amend their complaint to clarify the ascertainable loss theory, stating that "depending on the proposed amendments, the [plaintiffs] could assert a plausible UTPA claim." *Mendoza* 2017 U.S. Dist. LEXIS 4716, at *18. *Mendoza* bears little practical comparison to the underlying facts and legal underpinnings to Vicky Silva's case, and no similarities that would lend any support to defendant's arguments.

*Pearson* was a case addressing reliance as a causational component of predominance and common proof for class certification in Oregon state court under ORCP 32. Although Vicky Silva's UTPA claim is of course grounded in substantive state law, the Oregon state and federal class action rules diverge in many respects, including the sufficiency of the common proof sufficient to meet predominance requirement and the assessment of class certification as a whole. See, e.g., *Shea v. Chicago Pneumatic Tool Co.*, 164 Or. App. 198, 206-07 (1999), *rev denied*, 330 Or. 252 (2000). To be sure, the judicial landscape is replete with examples of federal courts granting class certification despite defendants' assertions that their unlawful misrepresentations would require insurmountable individualized determinations of the

subjective beliefs of class members, even if reliance is determined to be necessary to prove causation on a classwide basis.[5]

For all these reasons, Vicky Silva alleges more than sufficient facts to meet the "ascertainable loss" requirement, and her complaint cannot be dismissed for failure to show reliance.

### 3. FRCP 9(b) doesn't apply, and even if it did, Vicky Silva's complaint already satisfies its heightened pleading standard.

Vicky Silva's complaint does not contain the word "fraud," let alone a claim for fraud. Thus, FRCP 9(b)'s heightened pleading standard

---

[5] *See e.g., Ziemack v. Centel Corp.*, Case No. 92 C 3551, 1993 U.S. Dist. LEXIS 516, at *3 (N.D. Ill. Jan. 20, 1993) (finding that "courts in recent years have granted class certification of common law fraud claims, concluding that where the same representations were made to all class members common questions outweigh the problems of individual reliance); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013) (affirming class certification of RICO claims, holding that "payment may constitute circumstantial proof of reliance based on the reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed"); *Reyes v. Netdeposit, L.L.C.*, 802 F.3d 469, 488–492 (3d Cir. 2015) ("When Rule 23 is the mechanism to redress alleged RICO violations, predominance and commonality are satisfied if each element of the alleged RICO violation involves common questions of law and fact capable of proof by evidence common to the class … This is true even if 'establishing an injury is not as conducive to common proof[,]' so long as a court is 'satisfied that the plaintiffs have presented a plausible theory for proving a class-wide injury as a result of the racketeering activities of the alleged enterprises at issue[.]'" (citation omitted)); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) (in this 23(f) appeal of consolidated class actions alleging violation of eight states' consumer protection statutes prohibiting statements that are literally false or likely to mislead a reasonable consumer, finding predominance despite individual issues of reliance or causation), etc.

**RESPONSE TO MOTION TO DISMISS** – Page 36 of 42

only applies if the complaint's UTPA claim is "grounded in fraud," and relies exclusively on a "unified course of fraudulent conduct." *Vess*, 317 F.3d at 1103. This Court should follow the Oregon district court's *McKie* opinion and decline to apply FRCP 9(b) to the UTPA claim at issue in this case. As in *McKie*, the standard for damages under Vicky Silva's UTPA claim is willfulness, as opposed to some higher level of scienter required for common law fraud. *McKie* at 33. Further, Vicky Silva's claim is not premised exclusively on a unified course of fraud. Rather, Vicky Silva's complaint is based on a single transaction involving a pre-printed label. In *Vess*, the Ninth Circuit made clear that FRCP 9(b) only applies when a non-fraud claim alleging a unified course of fraudulent conduct relies "entirely" on that course of conduct as the basis of a claim. 317 F.3d at 1103. In this case, Vicky Silva's UTPA claim can hardly be said to rely "entirely" on a course of fraudulent conduct by defendant. Rather, Vicky Silva's claim relies squarely on the ascertainable loss caused by a nonconforming label in a single transaction. Finally, as discussed above, unlike a claim for fraud, Vicky Silva's UTPA claim does not necessarily require reliance, though she did in fact rely on defendant's label to make her purchase. *See McKie* at 33 (reasoning that FRCP 9(b) did not apply to plaintiffs UTPA claim in part because reliance was not required). For these reasons, FRCP 9(b) does not apply in this case.

**RESPONSE TO MOTION TO DISMISS** – Page 37 of 42

Even if FRCP 9(b) did apply to Vicky Silva's UTPA claim, her complaint already meets the heightened level of specificity needed for fraud in the Ninth Circuit. The Ninth Circuit's *Schreiber* opinion describes the heightened standard as requiring "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Schreiber Distrib.*, 806 F.2d at 1401. Vicky Silva's complaint meets each of these requirements. She provides the time (February 25, 2017), the place (a grocery store in Gresham, Oregon), and an actual picture of the label containing the alleged representation. Identification of the parties is not at issue in this case. Further, Vicky Silva's complaint sets forth in detail "what is false or misleading about [the label], and why it is false." *Vess*, 317 F.3d at 1106. Vicky Silva alleges defendant's label misled her because it uses "large colorful coconuts" and the word "coconut" on its front, yet contains no coconut ingredients, no coconut derivatives, does not taste like coconut, and has no coconut-related health properties. Complaint ¶ 4. For all these reasons, Vicky Silva's complaint satisfies FRCP 9(b). To the extent this Court determines that FRCP 9(b) applies and has not been met, Vicky Silva respectfully requests leave to amend her complaint. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to

amend is not appropriate unless it is clear … that the complaint could not be saved by amendment.")

**4. Injunctive relief request withdrawn.**

Given defendant's insistence on continuing to use its nonconforming product labels in Oregon, Vicky Silva withdraws her request for an injunction. Instead, she'll seek to supplement her complaint before trial to include transactions involving defendant's so-called coconut product that occurred after this case was filed.

## CONCLUSION

As explained above, defendant's labels don't conform with federal regulations and thus federal regulations do not pre-empt Vicky Silva's UTPA claim. The complaint's allegations, assumed true, satisfy each of the three elements of a UTPA claim. For these reasons, defendant's motion to dismiss must be denied. In the event the motion is granted under FRCP 9(b) (or for any other reason), Vicky Silva respectfully requests leave to amend.

April 21, 2017

**RESPECTFULLY FILED,**

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
Olsen Daines PC
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-201-4570

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 7,008 words according to Microsoft Word's word processing system, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, and any certificates of counsel.

April 21, 2017

<div style="margin-left:40%">

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
Olsen Daines PC
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-201-4570

</div>

## CERTIFICATE OF SERVICE

I certify that I served this document and all attachments on the

following by first class regular and by ECF:


**Unique Beverage Company, LLC**
**c/o Hochman Legal Group PLLC**
**Attn.: Joe Hochman**
**4580 Klahanie Drive S.E., Suite 165**
**Sammamish, Washington 98029**
**Joe@hlglaw.com**


April 21, 2017


s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
Olsen Daines PC
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-201-4570


**RESPONSE TO MOTION TO DISMISS** – Page 42 of 42