IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VICKY SILVA, an Oregon consumer,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

    v.

UNIQUE BEVERAGE COMPANY, LLC,
a foreign corporation,

        Defendant.

No. 3:17-cv-00391-HZ

OPINION & ORDER

Michael Fuller
OLSEN DAINES PC
111 S.W. 5th Avenue, Suite 3150
Portland, Oregon 97204

Mark Geragos
GERAGOS & GERAGOS
644 South Figueroa Street
Los Angeles, California 90017

      Attorneys for Plaintiff

/ / /

1 - OPINION & ORDER

Joe Hochman
HOCHMAN LEGAL GROUP, PLLC
4580 Klahanie Drive S.E., Suite 165
Sammamish, Washington 98029

     Attorney for Defendant

HERNANDEZ, District Judge:

     Plaintiff Vicky Silva brings this putative class action on behalf of herself and all others

similarly situated, against Defendant Unique Beverage Company, LLC, contending that the

labeling on one of Defendant's products is misleading and in violation of Oregon's Unlawful

Trade Practices Act, Oregon Revised Statutes §§ (O.R.S.) 646.605-646.656 (UTPA).  Defendant

moves to dismiss for failure to state a claim.  Although I reject Defendant's contention that

Plaintiff's claim is preempted, I grant the motion because Plaintiff fails to state a claim.  I deny

the motion as moot as to the injunctive relief request because Plaintiff withdraws that request.  I

give Plaintiff leave to amend.

## BACKGROUND

     In the Amended Complaint, Plaintiff alleges that in February 2017, she purchased a

beverage product manufactured by Defendant which was labeled as "Cascade Ice."  Am. Compl.

¶ 5; ECF 8.  The front label depicted large colorful coconuts along with the word "Coconut."

Am. Compl. ¶¶ 4, 5.  She asserts that the product contains no coconut, coconut water, coconut

juice, coconut pulp, coconut jelly, or coconut natural flavor.  *Id.* at ¶ 4.  Additionally, she

contends it does not taste like coconut and has no coconut health qualities.  *Id.*  The front label

looks like this:



Ex 1, Am. Compl.; ECF 8-1.

Plaintiff alleges that the labels on this product violate O.R.S. 646.608(1)(b) because they cause the likelihood of confusion and misunderstanding as to the source of Defendant's coconut product. *Id.* ¶ 11. Further, she contends that the labels violate O.R.S. 646.608(1)(e) because they falsely represent that Defendant's coconut product has coconut qualities, that the product has at

least some characteristic of coconut, that the product has the quality or taste of coconut, and that the product has at least some coconut health benefits or qualities. *Id.* She also alleges that the labels violate O.R.S. 646.609(1)(g), because they falsely represent that Defendant's coconut product has at least some of the coconut health qualities that consumers seek out in coconut products and has the quality or taste of coconut. *Id.*

Plaintiff contends that every consumer who purchased Defendant's Cascade Ice coconut water product suffered an "actual ascertainable loss of their purchase price," as well as an "actual ascertainable loss of the difference between the value of the product they received," and the "increased value that a product that tasted like coconut and had at least some actual coconut or coconut-related health properties would have had." *Id.* ¶ 10. Plaintiff seeks actual damages or $200 statutory damages. *Id.* ¶ 17. Finally, based on her allegation that Defendant's violation of the UTPA was reckless and in pursuit of profit, she seeks punitive damages. *Id.*

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

## DISCUSSION

Defendant moves to dismiss the Amended Complaint for several reasons. First, it argues

that the UTPA claims are preempted by federal law. Second, it argues that Plaintiff did not

suffer an ascertainable loss as required to state a UTPA claim. Third, Defendant contends that

Plaintiff fails to allege the elements of fraud with particularity. Fourth, Defendant asserts that

Plaintiff lacks standing to seek injunctive relief.

I. Preemption

A. Preemption Standards Generally

Defendant argues that Plaintiff's claim is preempted by the federal Food Drug and

Cosmetics Act (FDCA), 21 U.S.C. §§ 301-399f, as amended by the Nutrition Labeling &

Education Act of 1990 (NLEA), 21 U.S.C. § 343-1. Generally, the FDCA prohibits the

"adulteration or misbranding" of food in interstate commerce. 21 U.S.C. § 331(b); *Henry v.*

*Gerber Prods. Co.*, No. 3:15-cv-02201-HZ, 2016 WL 1589900, at *5 (D. Or. Apr. 18, 2016).

The NLEA more specifically addresses requirements for national uniform nutrition labeling. 21

U.S.C. § 343-1.

Under the Supremacy Clause of the Constitution, Congress has the power to preempt

state law. U.S. Const. art. VI, cl. 2; *Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492,

2500 (2012). As I explained in *Henry*, "[a]n analysis of a particular statute's preemptive effect

must 'start with the assumption that the historic police powers of the States were not to be

superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"

*Henry*, 2016 WL 1589900, at *5 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

This presumption against preemption requires courts "to support, where plausible, a narrow

interpretation of an express pre-emption provision, especially when Congress has legislated in a

field traditionally occupied by the States." *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2189

(2014) (citation and internal quotation marks omitted).  The Supreme Court has recognized

states' legitimate interests in regulating the sale of food products.  *See*, *e.g.*, *Fla. Lime & Avocado*

*Growers v. Paul*, 373 U.S. 132, 145 (1963) ("States have always possessed a legitimate interest

in 'the protection of (their) people against fraud and deception in the sale of food products' at

retail markets within their borders") (quoting *Plumley v. Massachusetts*, 155 U.S. 461, 472

(1894) ("[i]f there be any subject over which it would seem the states ought to have plenary

control, and the power to legislate in respect to which . . . it is the protection of the people against

fraud and deception in the sale of food products.")).

"Where Congress acts to preempt state law, the examination of the statute's preemptive

effect 'must rest primarily on a fair understanding of *congressional purpose*[.]'" *Henry*, 2016 WL

159800, at *5 (quoting *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009)).

Courts must "'consider not only the language of the statute itself but also the statutory framework

surrounding it and the structure and purpose of the statute as a whole.'"  *Id.* (quoting *Gordon*, 575

F.3d at 1060).

B.  Express Preemption

The FDCA specifies a number of ways that a food may be misbranded.  *E.g.*, 21 U.S.C. §

343(b) (offering a food for sale under the name of another food); 21 U.S.C. § 343(i) (providing a

food label which does not bear the common or usual name of the food or the common or usual

name of each ingredient).  Additionally, there is a catch-all provision which deems a product

"misbranded" if its label is "false or misleading in any particular[.]"  21 U.S.C. § 343(a).

In enacting the NLEA, Congress expressly preempted certain categories of state labeling

requirements that are not identical to federal requirements.  The statute provides that "no State . .

. may directly or indirectly establish . . . as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by [among others, 21 U.S.C. §§ 343(i), 343(k)], that is not identical to the requirement of such section[.]"  21 U.S.C. § 343-1(a)(2), (3). The NLEA contains no express preemption provision embracing the catch-all "false or misleading" misbranding provision in § 343(a) of the FDCA.  The "not identical" language in the preemption provision means that any state requirement which is not imposed by the federal regulation or differs from the federal regulation, is preempted.  *Henry*, 2016 WL 1589900, at *6; 21 C.F.R. § 100(c); *see also Henry*, 2016 WL 1589900, at *5 n.2 (explaining that "any state requirement" includes common-law duties as well as positive enactments such as statutes and regulations).  Thus, "state law or state law claims seeking to establish standards that differ from the FDCA's standards are expressly preempted."  *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 926 (N.D. Cal. 2014); *see also Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1118 (9th Cir. 2013) (state law claims precluded where they sought to impose a disclosure requirement "different from, or in addition to" the requirements of the Medical Devices Amendments to the FDCA).  In contrast, a "state-law claim relying on a standard consistent with the FDCA standard may not be preempted[.]" *Hendricks*, 30 F. Supp. 3d at 926.

Defendant argues that its labeling is permitted under the relevant federal law.  Thus, it contends that Plaintiff's UTPA claim seeks to impose an additional or different requirement and is therefore preempted.  Defendant relies heavily on *Henry* and the cases cited therein.  The plaintiff in *Henry* brought UTPA claims alleging that the labels used by the defendant on a baby-food product were misleading.  The label on the box of "Puffs" cereal snack stated that it was a "Cereal snack," was "Banana," was "naturally flavored with other natural flavors," and that it was

"Made with Whole Grains." 2016 WL 1589900, at *1.[1] The label featured a picture of a large bunch of three bananas and three slices of bananas. *Id.* The product ingredient list on the back stated that it contained less than two-percent of natural banana flavor as well as other ingredients. *Id.* The plaintiff observed the large pictures of the fruit on the label and believed she was misled because the cereal snack was not the "fruit- or vegetable-packed health snacks that the labeling, promotions, and advertising make them out to be." *Id.* She asserted that the labels were "illegally misleading because the packages prominently feature pictures of fruits or vegetables but the Puffs themselves do not contain any fruits or vegetables." *Id.* The defendant in *Henry* moved to dismiss the claims based on the NLEA express preemption clause. *Id.* at **5-6. I agreed with the defendant and dismissed the case. *Id.* at *5-9.

As discussed in *Henry*, the FTCA requires that labels bear "the common or usual name of each . . . ingredient . . . except that spices, flavoring, and colors . . .may be designated as spices, flavorings, and colorings without naming each." 21 U.S.C. § 343(i)(2). Implementing regulations "expressly permit a manufacturer to indicate the 'characterizing flavor' of a food product, and set forth exactly how the product's 'characterizing flavor' is to be described on the product's 'label, labeling, and advertising.'" *Dvora v. Gen'l Mills, Inc.,* No. CV 11-1074-GW PLAX, 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011) (quoting 21 C.F.R. § 101.22(i)). As the *Dvora* court explained:

> Section 101.22(i) permits a manufacturer to use the name and image of a fruit on a product's packaging to describe the characterizing flavor of the product even where the product does not contain any of that fruit, or contains no fruit at

---

[1] The product came in a variety of flavors including blueberry, sweet potato, apple, and peach. *Henry*, 2016 WL 1589900, at *1. The banana flavor was discussed in the April 2016 Opinion as illustrative of all of the varieties.

all.  *See* 21 C.F.R. §§ 101.22(i) (allowing characterizing flavor to be indicated by "word" or "vignette"); § 101.22(i)(1)(i) (the food may be labeled "natural flavored" when some flavor is "derived from" the fruit identified as the characterizing flavor, even though "the food contains no such ingredient"); § 101.22(i)(1)(ii) (where "none of the natural flavor used in the food is derived from" the fruit identified as the characterizing flavor, the food may be labeled "artificially flavored").

*Dvora*, 2011 WL 1897349, at *4.

In *Henry*, the Puffs product label represented the primary flavor of banana by word and vignette.  Under § 101.22(i), banana was considered the "characterizing flavor." There was no dispute that the product contained "natural banana flavor."  When the product includes natural flavor derived from the characterizing food ingredient, it may represent the characterizing ingredient by words or pictures if the label includes the words "natural" and "flavored" in proximity to the characterizing flavor, such as "natural strawberry flavored shortcake."  21 C.F.R. § 101.22(i)(1)(i).  Such was the case in *Henry*.  Given that the Puffs cereal product label was consistent with the regulations, the plaintiff's UTPA claims in *Henry* were preempted because they would have imposed obligations different from or in addition to what was required under federal law.  *Henry*, 2016 WL 1589900, at **6-7.

Defendant argues that *Henry* controls here because "the only difference between Henry and this case is that the former involved cereal and the images of bananas while this case involves a beverage and images of coconuts."  Def. Mot. 10, ECF 11.  Because, according to Defendant, the "preemption issues and relevant facts are the same[,]" the "outcome should also be the same."  *Id.*; *see also id.* at 8-10 (discussing *Henry* and cases cited in *Henry* in support of the proposition that FDA regulations allow illustrations of fruit on product labels to indicate that product's characterizing flavor even when the product contains no ingredients derived from the

depicted fruit).

While *Henry* is similar, it is not identical and the difference between *Henry* and the

instant case is significant. In contrast to *Henry* where the product contained "natural banana

flavor," Defendant's product lacks natural coconut flavor. Immediately above the Nutrition Facts

section on the bottle's label, the label states "Contains No Coconut." Def. Req. for Jud. Notice,

Ex. 2/B, ECF 12-2.[2] The back label with the ingredient list looks like this (image appears on

following page):

---

[2] Defendant asks the Court to take judicial notice of three images of the product. Def.
Req. for Jud. Notice, ECF 12. Plaintiff does not object. On a motion to dismiss, a court may
consider a document on which the complaint "necessarily relies" if: (1) "the complaint refers to
the document," (2) "the document is central to the plaintiff's claim," and (3) "no party questions
the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992, 998 (9th Cir. 2010). Because those criteria are satisfied, here, I consider the
images of the side and back labels of the product submitted by Defendant.



**CAFFEINE FREE**
Contains No Coconut
**1% Fruit Juice**

Manufactured For: Unique Beverage Company, LLC • Everett, WA 98213

www.cascadeicewater.com

## Nutrition Facts
Serving Size 8 fl oz (240 mL)
Servings Per Container: About 2.2

**Amount Per Serving**
**Calories** 0

| | % Daily Value* |
|---|---|
| **Total Fat** 0g | 0% |
| **Sodium** 0mg | 0% |
| **Total Carbohydrate** 0g | 0% |
| Sugars 0g | |
| **Protein** 0g | |

Not a significant source of other nutrients.
*Percent Daily Values are based
on a 2,000 calorie diet.

INGREDIENTS: CARBONATED
WATER. CITRIC ACID, PEAR
JUICE CONCENTRATE, POTASSIUM
BENZOATE (PRESERVATIVE),
NATURAL FLAVOR, POTASSIUM
CITRATE, SUCRALOSE, GUM
ARABIC, GLYCEROL ESTER OF
WOOD ROSIN.

*Id.*

The ingredient list lacks any reference to "natural coconut flavor." *Id.* (ingredient list reflects that the beverage contains "natural flavor" but not "natural coconut flavor"). Thus, § 101.22(i)(1)(i) does not apply. Again, that regulation would allow depiction of the characterizing coconut flavor on the label by use of the word coconut and the image of coconut if the label also said "natural coconut flavor," even if the product contains no coconut *but only* if the product contains "natural flavor derived from such [characterizing, *e.g.*, coconut] ingredient." 21 C.F.R. § 101.22(i)(1)(i). With the absence of natural coconut flavor as an ingredient, Defendant's use of the words "natural flavor" on the front of the label is not in compliance with the regulations.

Instead, § 101.22(i)(1)(ii) applies. That regulation governs the situation where "none of the natural flavor used in the food is derived from the product whose flavor is simulated[.]" 21 C.F.R. § 101.22(i)(1)(ii). Such is the case here. That is, based on the ingredient label, Defendant's Cascade Ice beverage contains no natural flavor derived from coconut, the simulated, characterizing flavor. In that situation, the "food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as 'artificially flavored.'" *Id.* Defendant's beverage label does not indicate the flavor of the product from which the flavor is derived or contain the words artificially flavored.

The difference between *Henry* and this case is illustrated in a 2013 case from the Northern District of California. In *Samet v. Procter & Gamble Co.*, No. 5:12-cv-01891 PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013), *on reconsideration on other grounds*, 2015 WL 5012828 (N.D. Cal. Aug. 14, 2015), the products at issue included "Fruity Snacks" which displayed pictures of strawberries, blueberries, and raspberries next to the statement "made with

real fruit" but which contained none of the depicted fruits. *Id.* at *6. The only fruit ingredient in the product was apple puree concentrate. *Id.* The plaintiffs brought claims under California's Unfair Competition Law, Fair Advertising Law, and the Consumer Legal Remedies Act, among others. *Id.* at *1. As to the Fruity Snacks, the plaintiffs alleged that the labeling was misleading. *Id.* at *6.

The defendant moved to dismiss based on the NLEA's express preemption language. The *Samet* court considered the regulations and explained that

> [r]egulation 101.22(i) states that the label or advertising may contain words or vignettes (including depictions of the fruit) describing the product's flavor even "if none of the natural flavor used in the food is derived from the product whose flavor is simulated," so long as the product is labeled "artificially flavored." Defendants' Fruity Snacks packaging, . . . . , complies with these requirements - along with the "Mixed Berry" label and depictions of various berry-shaped snacks, the label also contains the words "artificially flavored."

*Id.* (quoting 21 C.F.R. § 101.22(i)). The plaintiffs' claim "essentially argue[d]" that the Fruity Snacks packaging was misleading even though it complied with § 101.22(i), because the statement "Made with Real Fruit" was in close proximity to the depictions of the berry-shaped snacks. *Id.* But, the court explained, because the claim would create a requirement that goes beyond what is required by the FDCA, it was expressly preempted.

Like in *Henry*, the Fruity Snacks labeling in *Samet* was consistent with the FDCA requirements. Therefore, like in *Henry*, the *Samet* court found the plaintiffs' claim preempted because the claim would impose additional or different requirements than set forth in federal law.[3]

---

[3] This portion of the *Samet* opinion also explains the "artificially flavored" labeling requirement which is missing from Defendant's Cascade Ice packaging,

13 - OPINION & ORDER

The *Samet* court reached the opposite conclusion as to a different claim addressing "slack fill" in the defendant's Fruity Snacks and Pringles snack chips. *Id.* The governing regulations prohibit "'nonfunctional' slack-fill which does not exist for permissible purposes" such as protecting the package's contents or unavoidable product settling during shipping and handling. *Id.* (citing 21 C.F.R. § 100.100(a)). Construing the allegations in the complaint in the plaintiffs' favor, the court found that the plaintiffs had alleged that the defendant had violated the slack-fill regulation. *Id.* Therefore, in contrast to the Fruity Snacks claim based on the depiction of fruit and where the label complied with the federal law, the slack-fill claim was *not* expressly preempted because the product allegedly did not comply with the slack-fill regulations.

The contrasting preemption conclusions in *Samet* which were reached because some allegations showed compliance with the regulations while other allegations showed a violation of regulations, highlight the difference between *Henry* and the facts here. Because Defendant's Cascade Ice beverage product label violates the FDA's implementing regulations, plaintiff's UTPA claims are not expressly preempted by the NLEA. *E.g.*, *Hendricks*, 30 F. Supp. 3d at 928 (finding the plaintiff's state consumer, unfair competition, and false advertising statutory claims not expressly preempted because the product violated federal law and thus, the claims did not seek to impose requirements different from or additional to FDA regulations).

C. Implied Preemption

In addition to the express preemption provisions, the FDCA states that "all . . . proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337(a). In similar cases, this provision has been cited in support of an implied preemption argument. *E.g.*, *Ogden v. Bumble Bee Foods, LLC*, No. 5:12-

dcv-01828-LHK, 2014 WL 27527, at *11 & n.12 (N.D. Cal. Jan. 2, 2014) (noting that the "no private right of action" argument is no different from an implied preemption argument and citing to other food misbranding cases in which the argument that a plaintiff's claims are barred because the FDCA does not provide a private right of action has been presented and addressed as an implied preemption argument); *Trazo v. Nestlé USA, Inc.*, No. 5:12-cv-2272 PSG, 2013 WL 4083218, at *5 (N.D. Cal. Aug. 9, 2013) (noting that § 337(a) has been interpreted as giving rise to implied preemption with the effect that there is no private right of action to enforce the FDCA), *on reconsideration on other grounds*, 113 F. Supp. 3d 1047 (N.D. Cal. 2015).

Based on § 337(a), "state law claims that seek only to enforce federal law, nothing more, are impliedly preempted." *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977, 987 (D. Ariz. 2013) (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 344 (2001)), *clarified on denial of reconsideration* (D. Ariz. Oct. 24, 2013). But, such preemption extends only to those claims which exist *solely* because of violations of the FDCA. *Buckman*, 531 U.S. at 352-53 ("fraud-on-the-FDA" claim existed solely by virtue of the FDCA requirements and thus was impliedly preempted; distinguishing *Medtronic v. Lohr*, 518 U.S. 470 (1996) because there, the claims "arose from the manufacturer's alleged failure to use reasonable care in the production of the product, not solely from the violation of FDCA requirements"). As the *Samet* court noted, there is "no indication from the text of the NLEA or its legislative history that Congress intended a sweeping preemption of private actions predicated on requirements contained in state laws." *Samet*, 2013 WL 3124647, at *6 (internal quotation marks omitted). Continuing, the *Samet* court explained: "Both the legislative history and the text of the statute itself makes clear that Congress did not intend to prevent private citizens from bringing unfair competition or other

state-law claims, so long as they did not impose different or additional requirements from those set forth in the FDCA." *Id.*; *see also Lockwood v. Con Agra Foods, Inc.*, 597 F. Supp. 2d 1028, 1032 (N.D. Cal. 2009) ("Congress has explicitly stated that it . . . permits states to regulate subject matters covered by the NLEA and its regulations provided that such state laws do not fall within the FDCA's express preemption provisions").

In *Perez*, the Ninth Circuit quoted an explanation articulated by the Eighth Circuit regarding FDCA preemption. 711 F.3d at 1120 (discussing *In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)). The Eighth Circuit noted the "'narrow gap' through which a state-law claim must fit to escape preemption by the FDCA[.]" *Perez*, 711 F.3d at 1120 (quoting *In re Medtronic*, 623 F.3d at 1204). "'The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim will be expressly preempted . . .), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*.)." *Id.* (quoting *In re Medtronic*, 623 F.3d at 1204).

Here, as in *Samet*, Plaintiff's UTPA claims fit through the narrow gap. As in *Samet*, Plaintiff's claims "vindicate the separate and independent right to be free from deceptive and misleading advertising." 2013 WL 3124647, at *6. As in *Samet*, "Plaintiffs in this case are suing because the [Cascade Ice beverage label] is [allegedly] misleading and deceptive under [Oregon] law, not merely because Defendants' products violate the FDCA[.]" *Id.* at *7. As in *Samet*, "Plaintiffs' claims for damages arise from the state-made common duties that also happen to coincide with the federal statutory scheme, which ensures that these claims will not conflict with or impair the FDA's regulatory power." *Id.* As a result, Plaintiff's claims here, like the plaintiffs' claims in *Samet*, are not impliedly preempted.

Defendant raises two additional points worth discussing. First, Defendant attempts to distinguish the cases discussing preemption of California state-law claims by noting that California has adopted statutes that "expressly mirror the FDCA and provide a private cause of action for enforcing the state's version of the [FDCA] requirements." *Henry*, 2016 WL 1589900, at *9. But, *Samet* and other decisions have found a broad range of state statutory claims not impliedly preempted. *Samet*, 2013 WL 3124647, at *6 (noting that the plaintiffs' claims asserted violations of several California laws including that state's Unfair Competition Law (UCL), Fair Advertising Law (FAL), the Consumer Legal Remedies Act (CLRA), as well as the "Sherman Law" in which California expressly adopted the federal requirements for nutrient content claims, and finding none of the claims impliedly preempted; remarking that the NLEA did not intend to preempt unfair competition claims); *Ogden*, 2014 WL 27527, at **11-12 (noting that the plaintiff was not suing under the FDCA or California's Sherman Law, that state's analogous FDCA statute, but instead was suing under the UCL, FAL, and CLRA and rejecting the defendant's implied preemption argument as to those claims). The reasoning of these decisions was not predicated on the presence of a state statute identical to the FDCA. Thus, I reject Defendant's argument.

Second, Defendant argues that because the ingredient list plainly states that the product contains no coconut, the label cannot, as a matter of law, be misleading. Defendant primarily relies on two cases in support of this argument, one from the Central District of California and one from the Ninth Circuit. Neither is persuasive. In the Ninth Circuit case, *Ebner v. Fresh, Inc.*, the court concluded that the claims at issue were *not* preempted. 838 F.3d 958, 965 (9th

Cir. 2016).[4]  The court went on to separately hold, however, that under the "reasonable

consumer" test used to assess the California consumer protection statute claims, the plaintiff's

deception claim was not plausible.  *Id.* at 965-66.  *Ebner* does not support Defendant's contention

that an ingredient list is relevant to the preemption question.

In the district court case, *Viggiano v. Hansen Natural Corp.*, the court analyzed whether

claims challenging the labels on the defendant's diet sodas stating that the product contained "all

natural flavors," were preempted by the FTCA.  944 F. Supp. 2d 877, 886-92 (C.D. Cal. 2013).

The court examined the FTCA's and the NLEA's implementing regulations, concluded that the

label did not violate those regulations, and thus concluded that the plaintiff's state claims were

preempted.  *Id.* at 892 ("Hansen's labeling of its diet soda conforms to FDA regulations, and any

state law that requires different or additional labeling is preempted.").  At the end of its fairly

lengthy discussion of the issue, the *Viggiano* court remarked that

> [f]urthermore, the natural fruit from which the characterizing flavor is derived is
> listed on the statement of ingredients, and "reasonable consumers expect that the
> ingredient list contains more detailed information about the product that confirms
> other representations on the packaging."  *Williams v. Gerber Products Co.*, 552
> F.3d 934, 939-40 (9th Cir. 2008).  Here, the general "all natural flavors" label is
> confirmed by looking to the statement of ingredients which identifies the specific,
> natural, characterizing flavor for that can.

*Id.*

Although this discussion occurred in the context of the preemption issue, the facts are

distinguishable and the reasoning is unpersuasive.  First, the ingredient list reference appears at

the end of a long discussion and is more of an afterthought used to bootstrap the preemption

---

[4]  Defendant cited to the previously-issued opinion in *Ebner* which was reported at 818
F.3d 799.  Def. Reply 6, ECF 15.  That opinion was withdrawn and superseded by the opinion
cited above.

conclusion the court had already reached. Second, the court noted that the "all natural flavor"

label was *confirmed* by reading the ingredient list which included a natural flavor derived from

the characterizing flavor. *See id.* at 890 n. 34 (the statement of ingredients for the tangerine -

lime flavor, for example, listed "natural fruit flavors with extracts of California tangerines and

Florida and/or Colima limes."). Here, the ingredient list does *not* confirm the presence of the

natural flavor of coconut. In fact, it provides just the opposite by stating that the product contains

no coconut.

Third, *Williams*, the case cited by *Viggiano*, did not address the effect of an ingredient list

on a reasonable consumer in the context of a preemption argument. The *Williams* court noted

that because the defendant raised the preemption argument for the first time in its answering brief

on appeal, it would not consider it. 552 F.3d at 937 (the court added this comment as well:

"particularly where nothing in [the plaintiffs'] complaint suggested that they were attempting to

directly enforce violations of the FDCA."). Moreover, when the court moved on to discuss the

propriety of the district court's dismissal of the case on a motion to dismiss, it concluded that the

packaging at issue contained a number of features which could likely deceive a reasonable

consumer and thus, it reversed the district court. *Id.* at 939. The court's discussion of the

ingredient list included this observation: "We do not think that the FDA requires an ingredient

list so that manufacturers can mislead consumers and then rely on the ingredient list to correct

those misrepresentations and provide a shield for liability for the deception." *Id.* For these

reasons, *Viggiano* does not convince me that the ingredient list here is relevant to the preemption

issue.

Plaintiff's UTPA claims are not expressly preempted because, given that Defendant's

Cascade Ice coconut water beverage label does not comply with the FDCA and the NLEA regulations, the claims do not seek to impose additional or different requirements than those provided under federal law. The claims are not impliedly preempted because they are based on a state statute which independently regulates allegedly deceptive conduct and the claims are not based solely on a FDCA violation.

## II. Ascertainable Loss

"Oregon's UTPA . . . was enacted as a comprehensive statute for the protection of consumers from unlawful trade practices." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 115, 361 P.3d 3, 21 (2015). The statute declares dozens of trade practices unlawful. *Id.*, 361 P.3d at 22 (citing O.R.S. 646.607, 646.608). Plaintiff brings her claims under three separate subsections of O.R.S. 646.608(1). Am. Compl. ¶ 11 (alleging violations of O.R.S. 646.608(1)(b), 646.608(1)(e), and 646.608(1)(g)). These "misrepresentation" provisions encompass a wide array of factual misrepresentations about the nature of a product, including, but not limited to, facts relating to its "source, sponsorship, approval, or certification," O.R.S. 646.608(1)(b); "sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities," O.R.S. 646.608(1)(e); and "standard, quality, or grade" or "style or model[.]" O.R.S. 646.608(1)(g).

The UTPA may be publicly or privately enforced. *Pearson*, 358 Or. at 116, 361 P.3d at 22 (citing O.R.S. 646.632, 646.638). To prevail in a private consumer claim under O.R.S. 646.638(1), a plaintiff must prove: "(1) a violation of ORS 646.608(1); (2) causation ('as a result of'); and (3) damage ('ascertainable loss')." *Feitler v. Animation Celection, Inc.*, 170 Or. App. 702, 708, 13 P.3d 1044, 1047 (2000) (quoting O.R.S. 646.638(1)). "[A] plaintiff in a private action must prove injury in the form of an 'ascertainable loss of money or property.'" *Pearson*,

358 Or. at 116, 361 P.3d at 22 (quoting O.R.S. 646.638(1). The injured consumer can receive actual damages or a statutorily set minimum amount of $200, "whichever is greater." O.R.S. 646.638(1). The *Pearson* court noted that the "nature of the 'ascertainable loss' that the private plaintiff must prove distinguishes a UTPA claim" from other claims or remedies. *Pearson*, 358 Or. at 117, 361 P.3d at 22. To be "ascertainable," the loss must be "capable of being discovered, observed, or established." *Id.* (internal quotation marks omitted). The "loss must be objectively verifiable[.]" *Id.* And, it must "be specifically of 'money or property, real or personal.'" *Id.* (quoting O.R.S. 646.638(1)). Importantly, the "ascertainable loss must be a result of the unlawful trade practice. That is, the unlawful trade practice must have caused the ascertainable loss that the plaintiff suffered." *Id.* at 117, 361 P.3d at 23.

Putting aside the section of the Amended Complaint under the heading "Class Allegations," there are no specific allegations in support of the actual UTPA claim regarding damages or any kind of loss. Am. Compl. ¶¶ 16-17. Instead, Plaintiff refers to previous allegations and asserts in conclusory fashion that Defendant willfully, recklessly, knowingly, and intentionally violated O.R.S. 646.(1)(b), (e), and (g), causing Plaintiff and the Oregon class "ascertainable losses." *Id.* ¶ 16. The only prior relevant allegations are found in ¶ 10, asserted under the "Class Allegations" section. There, Plaintiff alleges that in order to "cash in" on the "billion-dollar coconut market," Defendant intentionally placed large colorful coconuts and the word "coconut" on the front of its product label, hoping that consumers would buy the product, "only to later find out that it does not taste like coconut and has no coconut health qualities." *Id.* ¶ 10. Then, the next sentence in the paragraphs states:

Every consumer who purchased defendant's so-called coconut product suffered an

actual ascertainable loss of their purchase price, and suffered an actual ascertainable loss of the difference between the value of the product they received that did not taste like coconut and had no actual coconut or coconut-related health qualities, and the increased value that a product that tasted like coconut and had at least some actual coconut or coconut-related health properties would have had.

*Id.* ¶ 10.

Defendant moves to dismiss the UTPA claim because of Plaintiff's failure to sufficiently allege that she suffered an ascertainable loss caused by the alleged misrepresentation of Defendant's product. Specifically, Defendant contends that under *Pearson*, Plaintiff must allege reliance. Defendant argues that Plaintiff has failed to include such an allegation in the Amended Complaint and additionally, that she cannot make the required reliance showing at all.

The main issue in *Pearson* concerned the plaintiffs' motion for class certification on UTPA claims alleging violations of O.R.S. 646.608(1)(e). *Pearson*, 358 Or. at 105, 361 P.3d at 16. However, resolution of the class certification question required consideration of "several subsidiary questions, some of which . . . turn on the substantive law that governs plaintiffs' UTPA claim." *Id.* That portion of the opinion is relevant here. The UTPA claims in *Pearson* concerned the defendant's "Marlboro Lights" low tar and nicotine cigarettes. The plaintiffs alleged generally that the defendant represented Marlboro Lights as having characteristics they did not have in violation of O.R.S. 646.608(1)(e). *Id.* at 117, 361 P.3d at 22. But, their "two claims differed . . . in the nature of the characteristic involved." *Id.* As described by the *Pearson* court:

The first claim asserted that Marlboro Lights promised lower tar and nicotine amounts and failed to deliver those lower amounts. The second claim was premised on a different characteristic: that defendant represented Marlboro Lights to be 'inherently' lower in tar and nicotine - that is, lower no matter how they were smoked - when in fact the amount of tar and nicotine varied based on smoker

behavior.

*Id.* Only the "inherent lightness" claim was at issue in the class certification motion. *Id.*

In support of the inherent lightness claim, the plaintiffs asserted that they suffered ascertainable losses "as a direct result" of the defendant's misrepresentation "because they paid for cigarettes they believed were inherently lower in tar and nicotine than defendants' regular cigarettes but received cigarettes that would deliver lowered tar and nicotine only if smoked in particular ways." *Id.* at 118, 361 P.3d at 23. The plaintiffs sought damages in two different forms: a purchase price refund or diminished value. *Id.* The court found it important to distinguish between these "distinct theories." *Id.* The court explained:

> One theory was a loss based on "diminished value." Specifically, plaintiffs' claim was that they and the class members bought a product that was worth less than they paid for it, and their damages were the difference in the value of the product as represented versus the value of the product they actually received. Plaintiffs' other theory of loss was that they and the class members bought Marlboro Lights believing defendant's representation of inherent lightness, they did not get what they believed they were getting, and they therefore were entitled to a refund of their purchase price.

*Id.* at 118-19, 358 Or. at 23.

The court first discussed the "diminished value" theory, explaining that the theory's premise was that the characteristic of "inherent lightness" had economic value, so that the plaintiffs suffered an economic loss at the moment of purchase because they bought a product lacking that characteristic. *Id.* at 119, 361 P.3d at 23-24. In the end, the court concluded that the plaintiffs failed to support that theory with any evidence that the price of the good they bought (Marlboro Lights) was any different than the product without the characteristic feature (regular Marlboros). *Id.* at 119-124, 361 P.3d at 23-26. The court explained that "[w]hen the price of

goods is not different based on some represented quality (say, for example, color or flavor), it simply does not logically follow that the quality has some greater *economic* worth." *Id.* at 122, 361 P.3d at 25. For a good "consumed or otherwise extinguished or depleted in its use . . . , under a diminished value theory, a purchaser can suffer an economic loss only in the form of having paid too much at the time of purchase." *Id.* at 123, 361 P.3d at 26. When the "good is the same price with or without a represented feature, no *logical* inference of economic loss arises." *Id.* at 124, 361 P.3d at 26. Given its conclusion that the plaintiffs' "diminished value theory [was] not viable on the record" before the court, the court declined to decide whether a diminished value theory of loss requires reliance to establish the requisite causal connection to establish a UTPA claim. *Id.* at 125, 361 P.3d at 27 n.21.

Next, the court addressed the "purchase price refund" theory of damages. This theory was based on the alleged failure to receive what the defendant's representation led the plaintiffs to believe they were buying. *Id.* at 124, 361 P.3d at 26. The "plaintiffs alleged that they suffered ascertainable loss 'as a direct result' of defendant's misrepresentation because they paid for cigarettes that they believed were inherently lower in tar and nicotine than defendant's regular cigarettes but received cigarettes that would deliver lowered tar and nicotine only if smoked in particular ways." *Id.* at 124, 361 P.3d at 26-27.

The court observed that the UTPA does not expressly require reliance. *Id.* at 125, 361 P.3d at 27. But, the statute does state that the ascertainable loss must be "as a result of" the unlawful trade practice. *Id.* at 125-26, 361 P.3d at 27. The "as a result of" phrase "effectively requires that the unlawful trade practice *cause* the ascertainable loss on which a UTPA plaintiff relies." *Id.* at 126, 361 P.3d at 27. The court observed that in "several previous cases, we have

examined whether the causation element of the statute equates with a requirement that a plaintiff prove reliance." *Id.* The court continued: "Our answer has been: 'It depends.' Whether reliance is required to establish causation turns on the nature of the unlawful trade practice and the ascertainable loss alleged." *Id.; see also id.* at 127, 361 P.3d at 28 ("Whether, to prove the requisite causation, a plaintiff must show reliance on the alleged unlawful trade practice depends on the conduct involved, and the loss allegedly caused by it.").

In *Pearson*, the court concluded that reliance was required to support a loss based on the product purchase price. *Id.* at 126-27, 361 P.3d at 27-28. Because its reasoning is directly applicable here, the full paragraph is set forth:

> Although reliance is not, in and of itself, an element of a UTPA claim, it is a natural theory to establish the causation of the loss (*i.e.*, the "injury") in a UTPA claim) for a purchaser seeking a refund based on having purchased a product believing it had a represented characteristic that it did not have. Causation is logically established if a purchaser shows that, without the misrepresentation, the purchaser would not have bought the product and thus should be entitled to a refund. But if the purchaser did not care whether the product had a character or quality as represented (or was not aware of the representation) and bought it for other reasons, then the purchaser's expectations have not been frustrated. In that circumstance, the misrepresentation cannot be said to have "caused" the purchaser to suffer a loss in the form of the purchase price. As a function of logic, not statutory text, when the claimed loss is the purchase price, and when that loss must be "as a result of" a misrepresentation, reliance is what "connects the dots" to provide the key causal link between the misrepresentation and the loss.

*Id.* at 126, 361 P.3d at 27.

In a recent case from this Court, Judge Aiken discussed *Pearson*, and ultimately found it distinguishable. *Mendoza v. Lithia Motors, Inc.*, No 6:16-cv-01264-AA, 2017 WL 125018, at **3-4 (D. Or. Jan. 11, 2017). Judge Aiken explained that unlike the plaintiffs in *Pearson*, the plaintiffs in *Mendoza*, who alleged that the defendants' undisclosed receipt of kickbacks for

vehicle financing and third-party products and services purchased by the plaintiffs violated the UTPA, was not an allegation that the defendants made an affirmative misrepresentation. *Id.* at *4 ("plaintiffs contend that their loss is not dependent on an affirmative misrepresentation or on the concealment of facts inconsistent with the representation of goods or services").

Nonetheless, Judge Aiken dismissed the UTPA claim because the plaintiffs' theories of loss and causation were unclear and did not support causation under the UTPA. *Id.* The plaintiffs failed to explain how the defendants' conduct caused them to suffer losses in the amount of the payments or kickbacks and failed to allege what they would have done differently or how the vehicle transactions would have been different if the defendants had not disclosed the alleged payment or kickbacks. *Id.* The plaintiffs did not allege, for example, that they would have declined to purchase the vehicles with an adequate disclosure. *Id.* As a result, the plaintiffs' allegations failed to support the element of causation and the claim was dismissed with leave to amend. *Id.*

The same result is required here. Plaintiffs' ascertainable loss and causation allegations are insufficient to state a UTPA claim. First, I agree with Defendant that the allegations in the Amended Complaint read as a whole raise a claim of affirmative express misrepresentation. *E.g.*, Am. Compl. ¶ 11 ("Defendant's labels . . . falsely represent that defendant's so-called coconut product has coconut qualities"). Second, other than the conclusory allegation in the UTPA claim that Defendant willfully, etc. violated O.R.S. § 646.608 as "alleged above, causing" Plaintiff and the class ascertainable losses, there are no causation allegations in the Amended Complaint. Thus, as in *Mendoza*, there is no allegation, for example, that Plaintiff would have done something differently or declined to purchase the product absent the alleged

misrepresentation.  Third, even in Paragraph 10, the only paragraph in the entire Amended

Complaint to attempt to set forth allegations of ascertainable loss, the allegations fail.  Am.

Comp. ¶ 10.  There is no causation language.

Additionally, given that the primary issue in *Pearson* was a class certification motion, the

court's discussion of the evidence required to support a logical inference of diminished value

damages did not address what was required to state such a claim.  However, *Pearson* suggests

that at a minimum there must be an allegation, even if proof is not yet required, that the price of

the good as represented with a particular coconut water feature is not the same as the price of the

good lacking such a feature.  Otherwise, as *Pearson* explained, there is no way to establish that

the plaintiff has suffered a loss.  *Pearson*, 358 Or. at 122, 361 P.3d at 25 ("In terms of economic

loss - which is the kind of loss required here - when there is no price difference for a good with a

particular feature and the same good without it, a plaintiff has not paid any extra for the

represented quality that the plaintiff did not receive").  I see no such allegation in the Amended

Complaint.

Plaintiff appears to allege ascertainable loss under the two theories discussed in *Pearson*:

diminished value and product purchase price.  *Id.*  While the *Pearson* opinion declined to address

whether reliance was required for the former theory, it squarely held on undistinguishable facts

that reliance is required for the latter theory.  *Pearson*, 358 Or. at 127, 361 P.3d at 28 (where the

plaintiffs in a UTPA claim allege an affirmative misrepresentation which is coupled with a

damages theory that the plaintiffs "suffered a loss in the form of the purchase price because [the

plaintiffs] did not get what they believed they were buying[,] . . . reliance inheres in the

combination.").  The Amended Complaint contains no reliance allegations and thus, cannot

support the product purchase price theory of ascertainable loss. Thus, I agree with Defendant that the Amended Complaint must be dismissed.

I reject Defendant's contention that the dismissal must be with prejudice, however. Defendant's arguments are essentially an assessment of the facts. Def. Mot. 14-16 (contending, among other things, that because the words "coconut water" and "coconut milk" do not appear anywhere on the label, Defendant made no representation that its Cascade Ice product was anything other than naturally-flavored spring water"; "any loss plaintiff might have sustained was not caused by [Defendant]" and "[n]o rational consumers could possibly be confused by [Defendant's] product label or by its express disclaimers and think they are buying 'coconut water.'"). These arguments are premature and not appropriate for a Rule 12(b)(6) dismissal motion. Therefore, I dismiss the UTPA claim but allow Plaintiff leave to amend.

III. Fraud Allegations

The Amended Complaint contains no expressly alleged fraud claim. Plaintiff confirms that the Amended Complaint "does not contain . . . a claim for fraud." Pl. Resp. 36, ECF 14. Nonetheless, Defendant argues that the allegations in the Amended Complaint fail to comply with Federal Rule of Civil Procedure 9(b) requiring fraud claims to be pleaded "with particularity." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and brackets omitted).

Defendant is correct, however, that Rule 9(b) applies not just to claims expressly

designated as "fraud," but also to claims "grounded in fraud" because the claim relies exclusively

on a "unified course of fraudulent conduct," or when fraud is a "necessary element" of a claim.

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). To determine if a claim is

grounded in fraud, courts compare the claim to the elements of a state common law fraud claim.

*McKie v. Sears Protection Co.*, No. CV 10-1531-PK, 2011 WL 1587112, at *10 (D. Or. Feb. 22,

2011) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009)), *adopted by J.

Haggerty* (D. Or. Apr. 26, 2011).

In *McKie*, the defendant argued, like Defendant here, that the plaintiffs' UTPA claim

should be dismissed for failure to comply with Rule 9(b). Judge Papak noted then that "[n]o

federal case directly addresses whether UTPA . . . claims amount fo fraud allegations required to

be plead with particularity under Rule 9(b)." *Id.* Citing to the standards in *Vess* and the need to

examine the elements of a state law fraud claim, he concluded that the plaintiffs' claims in *McKie*

were not based on fraud and were not required to comply with Rule 9(b). *Id.* at *11.

Judge Papak first noted that the claims at issue involved both an affirmative

misrepresentation and a misrepresentation by omission or non-disclosure. *Id.* Next, he discussed

controlling Oregon law which had previously compared the elements of UTPA claims and

common law fraud claims. *Id.* (discussing *Or. ex rel. Redden v. Disc. Fabrics, Inc.*, 289 Or. 375,

615 P.2d 1034 (1980)). In *Redden*, Judge Papak explained, the Oregon Supreme Court found

two important differences between the two types of claims: (1) UTPA claims based on non-

disclosure did not require proof of reliance; and (2) the scienter requirement for UTPA claims

was different than for fraud claims. *Id.* Judge Papak rejected the defendant's attempts to

distinguish "this clear holding of the Oregon Supreme Court[.]" *Id.* He concluded that *Redden*'s

discussion applied to private consumer actions under the UTPA and not just to a public suit for civil penalties and that a subsequent Oregon Supreme Court decision had not created a higher level of scienter for private UTPA damages suits but was instead consistent with *Redden*. *Id.* (discussing *Rathgeber v. Hemenway*, 335 Or. 404, 69 P.3d 710 (2003)).

Judge Papak concluded that "[i]n light of the differences between the elements of common law fraud and UTPA claims, the [plaintiffs'] UTPA claim cannot be considered tantamount to a fraud claim." *Id.* Thus, Rule 9(b) did not apply. In adopting Judge Papak's Findings and Recommendation, Judge Haggerty discussed the defendants' objections to Judge Papak's conclusion on this issue and determined that the defendants' arguments remained unpersuasive. 2011 WL 21587103, at *3. Noting that Judge Papak had discussed the defendants' "resistance to clear precedent," Judge Haggerty himself then summarized Judge Papak's discussion and rejected the defendants' arguments. *Id.* He determined that Judge Papak's "conclusion that plaintiffs' UTPA claims need not meet the pleading requirements of Rule 9(b) [was] correct [and] sound[.]" *Id.*

*McKie* controls the outcome here. Although Plaintiff's UTPA claim contains fraud-like allegations, an Oregon UTPA claim and an Oregon common law fraud claim remain distinct and as in *McKie*, Rule 9(b) does not apply.

IV. Injunctive Relief

Finally, Defendant moves to dismiss Plaintiff's claim for injunctive relief. In response, Plaintiff withdraws her request for an injunction. Pl. Resp. 39. As such, I deny this portion of the motion to dismiss as moot.

/ / /

CONCLUSION

Defendant's request for judicial notice [12] is granted.  Defendant's motion to dismiss [11] is denied as moot as to the injunctive relief claim but is otherwise granted.  Although Plaintiff's UTPA claim is not preempted, it fails to state a claim.  However, because amendment may be able to cure the deficiencies, I grant Plaintiff leave to amend.  Any amended complaint is due within fourteen (14) days of the date of this Opinion.

IT IS SO ORDERED.

Dated this _____15_____ day of _____June_____, 2017

Marco A. Hernandez
United States District Judge